UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES WHITE,

                Petitioner,             Case Number 2:08-CV-14603
                                                      Honorable Paul D. Borman

v.

PATRICIA CARUSO,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I. Introduction**

      Petitioner, James White, is currently a federal prisoner serving a 105-month sentence for a 2005 conviction of felon in possession of a firearm. 18 U.S.C. § 922(g)(1). When he completes this sentence, Petitioner will be required to serve the remainder of an effective sentence of 11-to-25 years for his 2005 Oakland Circuit Court convictions of possession with intent to deliver between 50 and 449 grams of cocaine, MICH. COMP. LAWS 333.7401(2)(a)(iii), possession with intent to deliver marijuana, MICH. COMP. LAWS 333.7401(2)(d)(iii), felon in possession of a firearm, MICH. COMP. LAWS 750.224f, and three counts of felony-firearm. MICH. COMP. LAWS 750.224b. In the present action, Petitioner challenges his state court convictions on six grounds: (1) Petitioner was denied the effective assistance of counsel at trial; (2) no evidence was presented at trial to demonstrate that the $CO_2$ powered .22 caliber pellet gun possessed by Petitioner was a firearm; (3) weapon Petitioner possessed was not a firearm as defined by Michigan law; (4) the statutory definition of firearm under Michigan law is

unconstitutionally vague; (5) the trial court erred in failing to properly instruct the jury on the offense of felon in possession of a firearm; and (6) there was insufficient evidence presented at trial to sustain Petitioner's conviction of felon in possession of a firearm. The Court will deny the petition because the claims are without merit.

**II. Background**

The evidence presented at Petitioner's trial indicated that police responded to a report that a man parked in a burgundy pickup truck was pointing a gun at a house on Luther Street in Pontiac. When officers arrived on the scene they observed two men sitting in a burgundy pickup truck. The officers ordered the men to stick their hands out of the windows. The man in the passenger's seat complied, but Petitioner, sitting in the driver' seat, only reached one arm out of his window. He appeared to be pushing an object towards the center of the vehicle with his right hand. One of the officers approached the driver's side door, and he saw a gun case sitting in Petitioner's lap with the butt of a handgun projecting from it. The officer reached into the vehicle and removed the gun case. The officers then removed the men from the truck.

An officer found 2.2 grams of cocaine and a little over $4,000 in cash in Petitioner's pockets. A search of the truck revealed six plastic bags containing marijuana and nine bags containing crack cocaine. The bags of crack cocaine weighed about 110-112 grams and had a street value of about $10,000.

A .22 caliber $CO_2$ powered pellet gun with metal pellets was found either in the back seat or under the front passenger seat of the truck. A firearms expert testified that this gun had a rifled barrel, was loaded with lead pellets, and could fire projectiles at a rate of 400 feet per second. He opined that the gun constituted a "firearm" and could cause an injury depending on

how close it was fired to the target. Three replica handguns that were designed to appear like real weapons were also found in the vehicle, including the one removed from Petitioner's lap.

While he was being transported to the police station, Petitioner told an officer that he could not buy real guns due to his criminal record, but he was able to purchase "toys or BB guns" like those found in the truck.

Police later obtained a warrant to search a unit belonging to Petitioner at a storage facility. Using a key found on Petitioner's key chain, police officers entered and searched the unit. They found a safe hidden underneath several bags of fertilizer. The safe contained a .38 caliber revolver, two 9 millimeter handguns, a .40 caliber handgun, and four boxes of ammunition.

Petitioner was found guilty by the jury of the above-described offenses. After he was sentenced in Federal court on an unrelated gun charge, Petitioner was sentenced in state court as a fourth time habitual offender to 6-to-20 years for the cocaine conviction, two concurrent terms of 1-to-15 years for the marijuana and felon in possession of a firearm convictions, and three consecutive five-year terms for the felony-firearm convictions. His state sentence was ordered to run concurrently with his federal sentence.

Petitioner filed a direct appeal in the Michigan Court of Appeals. His appellate brief raised eight claims:

> I. [Petitioner] was denied effective assistance of counsel when trial counsel failed to present expert testimony to refute the Prosecutor's expert and lay witness opinion that the .22 caliber BB gun was a firearm under the legal definition for purposes of felon in possession and felony firearm.
>
> II. The .22 caliber BB gun in the present case does not amount to a firearm under the statute as no evidence was presented showing that the BB gun was a dangerous weapon in its original, intended operation.

3

III. The Legislature did not intend for a BB gun such as the one at issue to be considered a firearm for purposes of the statutes in question.

IV. The statutory definition is unconstitutionally vague as there is no requirement of any evidence of the necessary velocity, projectile weight, etc. to show the requisite level of dangerousness of the projectile.

V. [Petitioner's] due process right to a fair trial on the charge of being a felon in possession of a firearm was violated where the trial court erred in failing to instruct the jury that an element of the offense is the [Petitioner's] knowledge that the item he was charged with possessing was, in fact, a firearm.

VI. [Petitioner's] right to be free from being twice placed in jeopardy for the same offense was violated when [Petitioner] was convicted of both felon in possession of a firearm and felony firearm.

VII. [Petitioner] was denied his due process right to a fair trial where the evidence presented at the trial failed to establish guilt beyond a reasonable doubt on each of the elements of the offenses charged in the general information.

VIII. [Petitioner] is entitled to a new trial due to cumulative error.

The Court of Appeals affirmed in an unpublished opinion. *People v. White*, 2007 Mich. App. LEXIS 339 (Mich. Ct. App. Feb. 13, 2007). Petitioner subsequently filed an application for leave to appeal, raising the same claims he asserted in the Michigan Court of Appeals except for the double jeopardy issue. The Michigan Supreme Court denied the application because the Court was not persuaded that the questions presented should be reviewed. *People v. White*, 479 Mich. 863 (2007).

Petitioner then filed the instant application for habeas relief, asserting the claims he presented to the Michigan Supreme Court and one new allegation of ineffective assistance of trial counsel.

4

### III. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537

U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, No. 2011 WL 148587, * 11 (U.S. 2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. 770.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## IV. Discussion

### A. Ineffective Assistance of Counsel

Petitioner's first claim asserts that his trial counsel provided ineffective assistance when he failed to challenge the legality of the search of Petitioner's vehicle. Although this particular allegation of ineffective assistance of counsel was not presented to the state courts during Petitioner's direct appeal, and it has therefore not been exhausted, the Court will exercise its discretion to deny it on the merits. See 28 U.S.C. § 2254(b)(2).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, he must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "*Strickland's* test for prejudice is a demanding one. The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Richter*, 131 S. Ct. at 792).

Petitioner claims that his attorney was ineffective because he failed to challenge the legality of the search of Petitioner's vehicle. Specifically, Petitioner asserts that under *Terry v. Ohio*, 392 U.S. 1 (1968), the police officers did not have reasonable suspicion to order Petitioner

7

out of his vehicle.

A police officer may conduct an investigatory stop only if he "has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity," *United States v. Place*, 462 U.S. 696, 702 (1983) (citing *Terry*, 392 U.S. at 22). A *Terry* stop "must be based on specific, objective facts," *Brown v. Texas*, 443 U.S. 47, 51 (1979), and requires that "the detaining officers . . . have a particularized and objective basis for suspecting the particular person stopped of criminal activity," *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). These facts must "warrant a man of reasonable caution in the belief that [a stop] was appropriate." *Terry*, 392 U.S. at 22 (internal quotation marks omitted).

To provide reasonable suspicion to make the investigatory stop, an informant's tip must provide sufficient "indicia of reliability," *Adams v. Williams*, 407 U.S. 143, 147 (1972), to warrant "reasonable, articulable suspicion" of criminal activity. *Place*, 462 U.S. at 702. A tip from an informant "whose reliability is not established" may support a finding of reasonable suspicion if "there is some independent corroboration by the police of the informant's information." *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000).

In this case, the officers' observations corroborated the information received in the anonymous call that a man in a burgundy truck pointed a gun at a house. When the officers arrived on the scene they saw a burgundy truck parked in the area described by the caller. The officers ordered the occupants out of the vehicle, but the driver refused to place his right hand out of the window despite repeated demands. The officer then saw Petitioner move his hand in a manner that indicated he was placing something in the center of the vehicle. When another officer approached the driver's side door, he saw a gun case and butt of a handgun in the driver's lap.

8

These observations independently corroborated the anonymous informant's information and gave rise to a reasonable suspicion that the men in the vehicle had just been engaged in criminal activity. *See United States v. Pearce*, 531 F.3d 374, 383 (6th Cir. 2008) (finding that an officer had reasonable suspicion for investigatory stop where officer observed suspect exit a vehicle, glance towards him, hunch over, place his right hand in the small of his back, and start backing away); *see also United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006) (finding that "the officers had a reasonable suspicion that [the defendant] was engaged in criminal activity based upon his hand movements consistent with drug-dealing activity, efforts to evade the police upon noticing them, and presence in a high crime area").

Because the investigatory stop by the officers was legal, Petitioner's counsel did not perform deficiently by failing to challenge it. Petitioner's claim is therefore without merit.

**B. Determination of Whether Gun Found in Petitioner's Truck is a Firearm under State Law**

Three of Petitioner's claims center on the allegation that the $CO_2$-powered gun found in Petitioner's truck was not a "firearm" as defined by state law. Petitioner's second claim asserts that the gun did not amount to a firearm because there was no evidence presented showing that the gun was a dangerous weapon in its original intended operation, as Petitioner argues state law requires. His third claim asserts that the Michigan Legislature did not intend for the gun at issue to be considered a firearm. And part of Petitioner's first claim asserts that his counsel was ineffective for failing to present expert testimony that the gun was not a firearm as defined by state law. None of these claims provide a basis for granting habeas relief because they all hinge on an interpretation of state law that was conclusively rejected by the Michigan Court of Appeals

9

during Petitioner's direct appeal:

> Defendant argues that insufficient evidence was adduced at trial to allow a jury to determine that a .22 caliber pellet gun found in his truck was a "firearm," as that term is statutorily defined. Defendant contends that the gun is not a dangerous weapon in its original, intended operation, and therefore cannot qualify as a "firearm." We review de novo challenges to the sufficiency of the evidence, viewing the evidence presented in a light most favorable to the prosecution. *People v. Sherman-Huffman*, 241 Mich. App. 264, 265 (2000).
>
> Michigan Compiled Law 750.222(d) defines a firearm as follows:
>
> "Firearm" means a weapon from which a dangerous projectile may be propelled by an explosive, or by gas or air. Firearm does not include a smooth bore rifle or handgun designed and manufactured exclusively for propelling by a spring, or by gas or air, BB's not exceeding .177 caliber.
>
> Two witnesses testified that the gun in issue was a .22 caliber with a rifle barrel that propelled a projectile by means of compressed gas ($CO_2$). The evidence also established that there were lead pellets inside the gun when the police seized, and that the gun was capable of firing a .22 caliber projectile "[a]pproximately 400 feet per second." There was also specific testimony that guns such as this "have been known . . . to cause injury." This evidence is sufficient to support the conclusion that the gun was a "firearm" capable of propelling a dangerous projectile. Defendant argues that the Legislature did not intend for a gun such as the one in issue to be considered a firearm for the purpose of the firearm statutes under which he was convicted. However, the language of section 750.222(d) is clear and unambiguous and thus plainly sets forth the Legislature's intent. *People v. Hill*, 269 Mich. App. 505, 515 (2006) ("The words contained in a statute provide us with the most reliable evidence of the Legislature's intent.").
>
> Defendant also argues that defense counsel's failure to present expert testimony regarding the issue of whether the .22 caliber pellet gun was a firearm under Michigan law constituted ineffective assistance of counsel. This argument fails because the gun clearly falls within the parameters of the statutory definition. "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v. Fike*, 228 Mich. App. 178, 182-183 (1998).

*White*, 2007 Mich. App. LEXIS 339, *2-4.

Petitioner asserts that the gun at issue was not a firearm as defined by state law because it

10

could be purchased by minors, was intended by the manufacturer to be used for target practice against such things as tin cans, and is inexpensive. The question boils down to one of statutory interpretation, and it is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (habeas relief does not lie for perceived state law errors); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (state courts are the final arbiters of state law); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). In this case, the Michigan Court of Appeals found–as a matter of state law–that the $CO_2$ gun at issue constituted a "firearm" for purposes of the firearm offenses.

The state court's interpretation of state law is binding on this Court, and it undermines Petitioner's claims. The state court rejected Petitioner's argument that the gun must be a "dangerous weapon in its original intended operation," as asserted in his second habeas claim based on its interpretation of the statute. It likewise rejected Petitioner's third habeas claim that the Legislature did not intend guns of this sort to be included in the definition of firearm on the same basis. It rejected Petitioner's claim that his counsel was ineffective for raising these objections at trial on the grounds that it would have been futile to do so. Because the state court's reason for denying relief on these claims hinged entirely on its interpretation of a state statute that cannot be second-guessed here, these claims cannot form the basis for granting habeas relief.

**C. Vagueness Challenge to Definition of Firearm**

Petitioner asserts in his fourth claim that if the weapon at issue constitutes a firearm under state law, then the statute allowing for such a finding is unconstitutionally vague.

11

Specifically, Petitioner asserts that by failing to specifically define a necessary velocity and projectile weight for a weapon to be considered a firearm, the statute lacks enough clarity to inform people what conduct is prohibited. He asserts that he knew he could not purchase and possess traditional firearms, but he did not have adequate notice that he was prohibited from possessing the pellet gun. The claim is without merit because the state court decision rejecting it was reasonable.

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 519 (1994) (internal quotation omitted); *see also*, *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). A statute is unconstitutionally vague only if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Batchelder*, 442 U.S. 114, 123 (1979) (internal quotation omitted); *see also, United States v. Williams*, 553 U.S. 285, 304 (2008). "'[P]erfect clarity and precise guidance'" is not required. *Williams*, 553 U.S. at 304 (*quoting Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). To succeed on a vagueness challenge the party asserting the challenge must show that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).

The Michigan Court of Appeals rejected this claim on the merits as follows:

> Defendant further argues that the statutory definition of a "firearm" found in section 750.222(d) is unconstitutionally vague because it does not require the prosecution to produce evidence of the dangerousness of the projectile capable of being propelled by the weapon. We disagree.

12

>Generally, apart from First Amendment over breadth concerns, a criminal statute may be challenged for vagueness on grounds that it (1) does not provide fair notice of the conduct proscribed, or (2) is "so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed." *People v. Kalchik*, 160 Mich. App. 40, 45 (1987). A statute is not unconstitutionally vague if "the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises, or even the words themselves, if they possess a common and generally accepted meaning." *People v. Cavaiani*, 172 Mich. App. 706, 714 (1988). A vagueness challenge is examined in light of the particular facts of a case. *People v. Lueth*, 253 Mich. App. 670, 677 (2002).
>
>We conclude that the statutory definition of "firearm" is not unconstitutionally vague. The plain meaning of the language of section 750.222(d) clearly indicates which weapons are included and excluded. As for the term "dangerous," it is defined, in part, to mean "able or likely to cause physical injury." Random House Webster's College Dictionary (1997). Evidence adduced below established that there were lead pellets inside the gun when the police seized it. The factory specifications for the gun in issue provided that it was capable of firing a .22 caliber projectile "[a]pproximately 400 feet per second." There was also specific testimony that guns such as this "have been known . . . to cause injury." Thus, defendant fails to overcome the presumption of constitutionality in light of the facts of this case. The statute provides fair notice of the type of behavior proscribed, and does not grant a fact-finder unfettered discretion to find guilt. *Kalchik, supra.*

*White*, 2007 Mich. App. LEXIS 339, *4-5.

This decision did not constitute an unreasonable application of clearly established Supreme Court law. The statue in question defines "firearm" with precision. It states that a firearm is "a weapon from which a dangerous projectile may be propelled by an explosive, or by gas or air." It then goes on to exclude smooth-bore weapons below a certain caliber. "[I]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Powell*, 423 U. S. 87, 92 (1975) (citations omitted). Therefore, with the exception of cases involving First Amendment guarantees, a defendant bears the burden of establishing that the statute is

13

vague as applied to his or her particular case, not merely that the statute could be construed as being vague in some hypothetical situation. *See United States v. Krumei*, 258 F.3d 535, 537 (6th Cir. 2001).

The weapon at issue here had a rifled barrel, was above the .177 caliber threshold, could propel lead pellets at 400 feet per second, and was of a type known to have caused injury. As applied to Petitioner, the statute is not unconstitutionally vague. A person of ordinary intelligence would have fair notice that the type of gun Petitioner possessed fit into the statutory definition of "firearm." The claim is therefore without merit.

**D. Jury Instructions**

Petitioner's fifth claim asserts that the jury instructions were inaccurate because the jury was not instructed that to be guilty of felon in possession of a firearm, Petitioner was required to know that the gun he possessed was a firearm as defined by state law. The state courts reasonably rejected this claim on the merits.

Generally, claims of erroneous jury instructions are not cognizable in federal habeas review unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). It is not enough to show that an instruction was incorrect under state law. *Estelle*, 502 U.S. at 71-72. The instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* at 147. "To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (quoting *Austin v. Bell*, 126 F.3d 843, 846-47 (6th Cir.1997) (internal quotation marks omitted)).

The state appellate court denied Petitioner's jury instruction claim as follows:

> Defendant also argues that his due process right to a fair trial on the charge of felon in possession of a firearm was violated when the trial court erred in failing to instruct the jury that an element of the offense is defendant's knowledge (1) of the presence of the firearm in his vehicle and (2) that the gun found in his truck was a firearm under Michigan law. We disagree. We examine the jury instructions as a whole, and reversal is not required when the issues are fairly presented and sufficiently protect the defendant's rights. *People v. Aldrich*, 246 Mich. App. 101, 124 (2001).
>
> Although our appellate courts have not specifically stated that knowledge of the presence of the firearm is an element of the crime of felon in possession, our Supreme Court has reasoned that possession of a firearm in general can be either actual or constructive. *People v. Hill*, 433 Mich 464, 469-470 (1989). Constructive possession exists if the location of the firearm is known and reasonably accessible to the defendant. *People v. Burgenmeyer*, 461 Mich. 431, 437 (2000).
>
> In this case, the trial court instructed the jury as follows:
>
>> On count five [defendant] is charged with having possession of a firearm in this state after having been convicted of a specified felony. To prove this charge and these are the stipulations that came in ladies and gentlemen. The prosecutor must prove beyond a reasonable doubt. One, that [defendant] possessed a firearm in this state; two that [defendant] was convicted of a specified felony stipulated to; and three likewise that less than five years have passed since all fines were paid.
>>
>> Possession does not necessarily mean ownership, it means either a person has actual physical control of the substance or thing, as this mug that I now have in my hand, or that a person has a right to control the substance or thing even though it may be in a different room or place.
>>
>> Possession may be singular or solo where one person alone possesses it, or it may be joint where two or more people share in its possession. It is not enough that [defendant] merely know about cocaine, marijuana and/or a gun, it is-one possesses those items only if he or she had control of them or the right to control them either alone or with someone else.
>
> * * *

15

> A person has possession of a firearm when it's available and accessible at the time the felony is committed. Actual possession of a firearm at the time of arrest is not required, and access to the weapon is not to be determined solely by reference to an arrest.
>
> We conclude that these instructions properly informed the jury of the knowledge requirement of the crime of felon in possession.

*White*, 2007 Mich. App. LEXIS 339, *5-8.

Petitioner asserts that the court did not instruct the jury on the requirement that he *knowingly* possessed a firearm. That contention is incorrect. As quoted above, the trial court instructed the jury that to possess a firearm, not only must the person know about its presence, he must also have control of it or the right to control it. Although the requirement could have been stated more clearly, the trial court adequately conveyed to the jury that the prosecution was required to prove that Petitioner knew he possessed the weapon. By stating that it was "not enough to merely know" about he gun's presence, the instructions excluded the possibility that the jury believed that it could find Petitioner guilty even if he did not know that the gun was present in his truck.

Petitioner also makes the more nuanced argument that the trial court failed to instruct the jury on the supposed requirement that Petitioner knew that the gun he possessed constituted a "firearm" under state law. This argument fails because Petitioner has failed to demonstrate that the statute has been interpreted to require such an element of specific intent. The Michigan Supreme Court has interpreted the statute as requiring that the defendant "possess" the firearm–meaning that he knows about its presence and has control over it–but it has never held that the defendant must know that the gun constitutes a firearm. *People v. Hill*, 433 Mich 464, 469-470 (1989). Petitioner has not cited to any such authority, nor has the Court located any

such authority that contains this additional element. The claim is therefore without merit.

**E. Sufficiency of the Evidence**

Petitioner's sixth claim asserts that constitutionally insufficient evidence was offered at trial to establish that he had possession of the $CO_2$-powered gun found in his vehicle. This claim does not provide a basis for granting habeas relief because it was reasonably rejected by the state courts.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324, n. 16.

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, No.    S.Ct.    , 2011 U.S. LEXIS 7603, 2011 WL 5118826, * 1 (U.S. October 31, 2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will

sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*

The Michigan Court of Appeals denied Petitioner's sufficiency of the evidence claim as follows:

> Defendant further argues that the evidence presented at trial failed to establish his guilt beyond a reasonable doubt of the crime of felon in possession of a firearm. We disagree. Defendant stipulated to the fact that he had been convicted of a felony and that the sentence date of that felony was December 21, 2005. Therefore, defendant was ineligible to possess a firearm under Michigan law as of the date of his arrest. Further, as discussed above, the evidence was sufficient to establish that the gun in issue satisfied the statutory definition of "firearm."
>
> Thus, resolution of this issue centers on whether sufficient evidence was adduced to prove beyond a reasonable doubt that defendant was in possession of the firearm in issue. We hold that it was. The evidence presented established that the firearm was found in defendant's truck, and that defendant was in the driver's seat when the officers arrived. The arresting officers could not testify with certainty as to the location within the truck where the firearm was found, leaving an open question as to whether defendant or his passenger was the purveyor of the weapon. However, with these facts, the jury reasonably could have concluded that the firearm was accessible to defendant and that if he did not have exclusive possession of it, he jointly possessed it with his passenger.

*White*, 2007 Mich. App. LEXIS 339, *9-10.

This decision was reasonable. The evidence at trial showed that the gun was found in Petitioner's truck and that he was in the driver's seat. Under Michigan law, a defendant is considered in "constructive possession" of contraband when there is a sufficient nexus between defendant and the contraband, establishing that defendant has the right to exercise control over the contraband and knows of its presence. *People v. Wolfe*, 440 Mich. 508, 520 (1992). While the gun found in Petitioner's lap was only a replica, the circumstances allowed a reasonable juror to find that Petitioner had constructive possession of all the guns found in his truck. The gun

was located somewhere in the passenger compartment of the vehicle, and Petitioner tacitly admitted to officers that the guns found in the vehicle were his when he explained that because he had a criminal record he could only buy "toy" guns like those found in the vehicle. The state court therefore did not unreasonably decide this claim.

## V. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009:

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Rule 11, Rules Governing Section 2254 Proceedings.

When a district court denies a habeas petition a certificate of appealability should issue only if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In the present case, for reasons stated in greater detail in the opinion and order denying the petition, this Court found that Petitioner's application for a writ of habeas corpus is meritless. The Court will deny petitioner a certificate of appealability with respect to his claims because reasonable jurists would not find it debatable whether this Court was correct in determining that the petition should be denied. The Court will also deny petitioner leave to appeal in forma pauperis, because the appeal would be frivolous. *Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## VI. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal in forma pauperis.

**SO ORDERED.**

_____
Honorable Paul D. Borman
United States District Judge

Dated: 12-12-11